Filed 2/24/23  In re Z.W. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re Z.W., a Person Coming Under the Juvenile Court Law. | |
| FRESNO COUNTY DEPARTMENT OF SOCIAL SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> F.W., <br><br> Defendant and Appellant. | F084701 <br><br> (Super. Ct. Nos. 21CEJ300229-1, 21CEJ300229-2) <br><br><br> **OPINION** |

### THE COURT[*]

APPEAL from an order of the Superior Court of Fresno County.  Todd Eilers, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)

Monica Vogelmann, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel C. Cederborg, County Counsel, and Ashley McGuire, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Detjen, Acting P. J., Peña, J. and DeSantos, J.

# INTRODUCTION

D.W. (mother) and F.W. (father) are the parents of Z.W. (born July 2020) and B.W. (born June 2021) (collectively, the children). Father appeals from the juvenile court's order terminating parental rights pursuant to Welfare and Institutions Code section 366.26.[1] Father's sole contention on appeal is that the Fresno County Department of Social Services (the department) and the juvenile court failed to comply with the inquiry requirements of the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.) (ICWA) and related California law because extended family members were not asked about the children's Indian ancestry and notice was defective.[2]

The department concedes error. For the reasons discussed herein, we accept the department's concession of error. Consistent with our recent decisions in *In re K.H.* (2022) 84 Cal.App.5th 566 (*K.H.*) and *In re E.C.* (2022) 85 Cal.App.5th 123 (*E.C.*), we conclude "the error is prejudicial because neither the [department] nor the court gathered information sufficient to ensure a reliable finding that ICWA does not apply and remanding for an adequate inquiry in the first instance is the only meaningful way to safeguard the rights at issue. ([*In re A.R.* (2021)] 11 Cal.5th [234,] 252–254 [(*A.R.*)].) Accordingly, we conditionally reverse the juvenile court's finding that ICWA does not apply and remand for further proceedings consistent with this opinion, as set forth herein." (*K.H.*, at p. 591; accord, *E.C.*, at pp. 157–158.)

---

[1]     All further statutory references are to the Welfare and Institutions Code.

[2]     "[B]ecause ICWA uses the term 'Indian,' we do the same for consistency, even though we recognize that other terms, such as 'Native American' or 'indigenous,' are preferred by many." (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 739, fn. 1.)

# FACTUAL AND PROCEDURAL BACKGROUND[3]

## A.      Petition and Detention

On June 17, 2021, the department filed a petition on behalf of the children pursuant to section 300, subdivision (b)(1).  The children had already been detained and placed together in a licensed foster home.  The petition contained Indian Child Inquiry Attachment forms (ICWA-010(A)) for each child stating there was no reason to believe the children could be Indian children; however, the forms did not specify who the social worker inquired of.

The detention report stated ICWA did or could apply.  The department noted it had not interviewed mother, but "[p]rior history" indicated she had no Indian ancestry on the maternal side.  Father claimed Indian ancestry with the Blackfeet tribe through paternal great-grandmother on his mother's side, but he did not believe he was a registered member.

On June 18, 2021, mother and father appeared at the detention hearing.  The juvenile court conducted ICWA inquiries with both parents.  Father claimed ancestry with the Blackfeet tribe through paternal great-grandmother Bessie W.  To his knowledge, she was not an enrolled member, and he was not eligible for enrollment.  Additionally, father stated he had great-aunts who were registered but were now deceased.  He did not know where the Blackfeet tribe's headquarters were located.  Mother stated she was not sure if she had Indian ancestry.  The court asked the department if they wanted any further ICWA inquiry and the department said no.  The court ordered the children detained and set a jurisdiction and disposition hearing.

---

**3**      Because the sole issue on appeal concerns ICWA, we restrict our facts to those bearing on that issue or helpful for clarity.

**B.      Jurisdiction and Disposition**

The jurisdiction and disposition report stated ICWA did or could apply.  Notice to the tribes was pending due to mother's whereabouts being unknown and would be sent once contact was made with her.  Father reported possible Cherokee ancestry through paternal grandmother.

On July 20, 2021, at the combined jurisdiction and disposition hearing, the juvenile court found ICWA did not apply, bypassed father for reunification services, ordered mother to participate in reunification services, and set a six-month review hearing.

In August 2021, the department sent notice to the Blackfeet tribe and the Bureau of Indian Affairs using ICWA-030 form.  The notice did not include information for certain paternal relatives the department was in contact with, like the paternal aunts Claranisha G. and Tanesha Y.  The Blackfeet tribe sent responses to the department stating the children were not Indian children.

**C.      Combined Six-Month Review and ICWA Motion**

On January 3, 2022, the department filed a motion to declare ICWA inapplicable due to the response from the Blackfeet tribe.  According to the points and authorities, the department did not receive a response from the Bureau of Indian Affairs.

On January 11, 2022, at the six-month review hearing, the juvenile court found ICWA did not apply, terminated mother's reunification services, and set a section 366.26 hearing.

**D.      Section 366.26**

The section 366.26 report stated ICWA did or could apply.  In September 2021, the juvenile court had found ICWA did not apply.  On January 31, 2022, the department conducted a new ICWA inquiry on father and he reported that his family did not have Indian ancestry.  On April 27, 2022, the department conducted a new ICWA inquiry on

4.

mother and she reported her family did not have Indian ancestry. The department recommended the court continue to find ICWA inapplicable.

On July 26, 2022, at the section 366.26 hearing, the juvenile court terminated parental rights.

On July 27, 2022, father filed a notice of intent to file writ petition, which this court deemed a notice of appeal.

**DISCUSSION**

I.     **ICWA**

   A.     **Background**

" 'ICWA is a federal law giving Indian tribes concurrent jurisdiction over state court child custody proceedings that involve Indian children living off of a reservation' [citations], in furtherance of 'federal policy " 'that, where possible, an Indian child should remain in the Indian community' " ' [citations]. 'ICWA establishes minimum federal standards, both procedural and substantive, governing the removal of Indian children from their families' [citations], and '[w]hen ICWA applies, the Indian tribe has a right to intervene in or exercise jurisdiction over the proceeding.' " (*K.H.*, *supra*, 84 Cal.App.5th 566, 594, fn. omitted; accord, *E.C.*, *supra*, 85 Cal.App.5th at p. 138, fn. omitted.)

" 'In 2006, California adopted various procedural and substantive provisions of ICWA.' [Citations.] The Legislature's 'primary objective … was to *increase* compliance with ICWA. California Indian Legal Services (CILS), a proponent of the bill, observed that courts and county agencies still had difficulty complying with ICWA 25 years after its enactment, and CILS believed codification of [ICWA's] requirements into state law would help alleviate the problem. [Citation.]' " (*K.H.*, *supra*, 84 Cal.App.5th at p. 595; accord, *E.C.*, *supra*, 85 Cal.App.5th at pp. 138–139.)

" 'In 2016, new federal regulations were adopted concerning ICWA compliance. [Citation.] Following the enactment of the federal regulations, California made conforming amendments to its statutes, including portions of the Welfare and Institutions

Code related to ICWA notice and inquiry requirements.  [Citations.]  Those changes became effective January 1, 2019 .…'  [Citation.]  Subsequently, the Legislature amended section 224.2, subdivision (e), to define 'reason to believe,' effective September 18, 2020."  (*K.H.*, *supra*, 84 Cal.App.5th at pp. 595–596, fn. omitted; accord, *E.C.*, *supra*, 85 Cal.App.5th at p. 139.)

### B.      Summary of Duties of Inquiry and Notice

"[W]hether a child is a member, or is eligible for membership, in a particular tribe is a determination that rests exclusively with the tribe, and neither the [department] nor the court plays any role in making that determination.  [Citations.]  ' "Because it typically is not self-evident whether a child is an Indian child, both federal and state law mandate certain inquiries to be made in each case." ' "  (*K.H.*, *supra*, 84 Cal.App.5th at p. 596; accord, *E.C.*, *supra*, 85 Cal.App.5th at pp. 139–140.)

"In California, section 224.2 'codifies and elaborates on ICWA's requirements of notice to a child's parents or legal guardian, Indian custodian, and Indian tribe, and to the [Bureau of Indian Affairs].' "  (*In re A.R.* (2022) 77 Cal.App.5th 197, 204.)  California law imposes "an affirmative and continuing duty [on the court and the county welfare department] to inquire whether a child for whom a petition under [s]ection 300, … may be or has been filed, is or may be an Indian child."  (§ 224.2, subd. (a).)

### 1.      Initial Inquiry

"The [state law] duty to inquire begins with the initial contact, including, but not limited to, asking the party reporting child abuse or neglect whether the party has any information that the child may be an Indian child."  (§ 224.2, subd. (a).)  "If a child is placed into the temporary custody of a county welfare department pursuant to [s]ection 306 … the county welfare department … has a duty to inquire whether that child is an Indian child.  Inquiry includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may

6.

be, an Indian child and where the child, the parents, or Indian custodian is domiciled."
(§ 224.2, subd. (b).) Additionally, "[a]t the first appearance in court of each party, the court shall ask each participant present in the hearing whether the participant knows or has reason to know that the child is an Indian child. The court shall instruct the parties to inform the court if they subsequently receive information that provides reason to know the child is an Indian child." (§ 224.2, subd. (c).)

### 2. Reason to Believe

"If the initial inquiry provides 'reason to believe' that an Indian child is involved in a proceeding—that is, if the court or social worker 'has information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe'—then the court or social worker 'shall make further inquiry' regarding the child's possible Indian status as soon as practicable." (*In re Ezequiel G.* (2022) 81 Cal.App.5th 984, 999 (*Ezequiel G.*), citing § 224.2, subd. (e).) "Further inquiry 'includes, but is not limited to, all of the following: [¶] (A) Interviewing the parents, Indian custodian, and extended family members[;] [¶] (B) Contacting the Bureau of Indian Affairs and the State Department of Social Services[; and] [¶] (C) Contacting the tribe or tribes and any other person that may reasonably be expected to have information regarding the child's membership, citizenship status, or eligibility.' " (*Ezequiel G.*, at p. 999.)

### 3. Reason to Know

"If there is 'reason to know' a child is an Indian child, the [department] shall provide notice to the relevant tribes and agencies in accordance with section 224.3, subdivision (a)(5)." (*Ezequiel G.*, *supra*, 81 Cal.App.5th at p. 999, citing § 224.2, subd. (f).) "There is 'reason to know' a child is an Indian child if any one of six statutory criteria is met—i.e., if the court is advised that the child 'is an Indian child,' the child's or parent's residence is on a reservation, the child is or has been a ward of a tribal court, or

7.

either parent or the child possess an identification card indicating membership or citizenship in an Indian tribe." (*Ezequiel G.*, at p. 999, citing § 224.2, subd. (d).)

## II. Analysis

### A. Summary of ICWA Inquiry and Notice

In the present case, the record shows that prior to the detention hearing father claimed Indian ancestry with the Blackfeet tribe through paternal great-grandmother, but he did not believe he was a registered member of the tribe. At the detention hearing, the juvenile court conducted an inquiry on both parents. Father again reported ancestry with the Blackfeet tribe through paternal great-grandmother. To his knowledge, she was not an enrolled member, and he was not eligible for enrollment. He said he had great-aunts who were registered but were now deceased. As for mother, she denied having Indian ancestry. After the detention hearing, father reported paternal grandmother had Cherokee ancestry. Throughout the proceedings, the department was in contact with or had information for several family members, including paternal aunt Claranisha, paternal aunt Tanesha, paternal grandmother Dorothy, paternal great-grandmother Bessie, and an unnamed maternal grandmother who was willing to adopt the children. There is no indication these family members were asked about the children's possible Indian ancestry.

The record further shows the department sent notice to the Blackfeet tribe and the Bureau of Indian Affairs, but the notice failed to include information for several family members. For instance, paternal aunts Claranisha and Tanesha were not listed at all. Notice was not sent to the Cherokee tribe. The department concedes inquiry was deficient because extended family members were not asked about the children's Indian status and notice was defective as it was missing familial information.

Recently, in *K.H.* and *E.C.*, we addressed ICWA error at the inquiry stage. There, we explained our decision not to follow the approaches articulated by other appellate courts for determining whether ICWA error requires reversal and concluded that the

8.

Supreme Court's decision in *A.R.* supplies the appropriate framework for assessing prejudice in this context. (*K.H.*, *supra*, 84 Cal.App.5th at pp. 607–608, citing *A.R.*, *supra*, 11 Cal.5th at pp. 252–254; accord, *E.C.*, *supra*, 85 Cal.App.5th at p. 152.) Applying the standards we articulated in *K.H.* and *E.C.*, as we will discuss below, we conclude the department's error is prejudicial and remand for the department to conduct a proper, adequate, and duly diligent inquiry is necessary.

**B.     Standard of Review**

"The juvenile court's finding that ICWA does not apply to the proceeding rests on two elemental determinations, 'subject to reversal based on sufficiency of the evidence.' " (*K.H.*, *supra*, 84 Cal.App.5th at p. 601, quoting § 224.2, subd. (i)(2)); accord, *E.C.*, *supra*, 85 Cal.App.5th at pp. 142–143.) First, "[t]he court must find there is 'no reason to know whether the child is an Indian child,' which is dependent upon whether any of the six circumstances set forth in subdivision (d) of section 224.2 apply." (*Ibid.*) Second, "[t]he juvenile court must … find a 'proper and adequate further inquiry and due diligence .…' " (*K.H.*, at p. 601, quoting § 224.2, subd. (i)(2)); accord, *E.C.*, at p. 143.)

Under the substantial evidence standard, " 'a reviewing court should "not reweigh the evidence, evaluate the credibility of witnesses, or resolve evidentiary conflicts." [Citation.] The determinations should "be upheld if … supported by substantial evidence, even though substantial evidence to the contrary also exists and the trial court might have reached a different result had it believed other evidence." ' [Citations.] The standard recognizes that '[t]rial courts "generally are in a better position to evaluate and weigh the evidence" than appellate courts' [citation], and 'an appellate court should accept a trial court's factual findings if they are reasonable and supported by substantial evidence in the record' [citation]. '[I]f a court holds an evidentiary hearing, it may make credibility determinations, to which an appellate court would generally defer.' " (*K.H.*, *supra*, 84 Cal.App.5th at p. 601; accord, *E.C.*, *supra*, 85 Cal.App.5th at p. 143.)

The juvenile court's finding on the second element, however, "is ultimately discretionary because it requires the juvenile court to 'engage in a delicate balancing of' various factors in assessing whether the [department's] inquiry was proper and adequate within the context of ICWA and California law, and whether the [department] acted with due diligence." (*K.H.*, *supra*, 84 Cal.App.5th at p. 601, quoting *In re Caden C.* (2021) 11 Cal.5th 614, 640; accord, *E.C.*, *supra*, 85 Cal.App.5th at p. 143; *Ezequiel G.*, *supra*, 81 Cal.App.5th at pp. 1004–1005.) Therefore, we employ a hybrid standard and review the court's determination for substantial evidence and abuse of discretion. (*K.H.*, at p. 601; accord, *E.C.*, at pp. 143–144; *Ezequiel G.*, at pp. 1004–1005.)

" 'Review for abuse of discretion is subtly different [from review for substantial evidence], focused not primarily on the evidence but the application of a legal standard. A court abuses its discretion only when " ' "the trial court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination." ' " [Citation.] But " ' "[w]hen two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court" ' " [Citations.] [¶] While each standard here fits a distinct type of determination under review, the practical difference between the standards is not likely to be very pronounced.' " (*K.H.*, *supra*, 84 Cal.App.5th at p. 602; accord, *E.C.*, *supra*, 85 Cal.App.5th at pp. 143–144.)

"Review of the juvenile court's findings under the foregoing standards is deferential, but ' "an appellate court [nevertheless] exercises its independent judgment to determine whether the facts satisfy the rule of law." ' [Citations.] Where the material facts are undisputed, courts have applied independent review to determine whether ICWA's requirements were satisfied." (*K.H.*, *supra*, 84 Cal.App.5th at p. 602; accord, *E.C.*, *supra*, 85 Cal.App.5th at p. 144.)

### C.     Department and Juvenile Court Erred

#### 1.     Duties

As previously mentioned, "[a]t the first appearance in court of each party, the court shall ask each participant present in the hearing whether the participant knows or has reason to know that the child is an Indian child.  The court shall instruct the parties to inform the court if they subsequently receive information that provides reason to know the child is an Indian child."  (§ 224.2, subd. (c).)

Moreover, when "a child is placed into the temporary custody of a county welfare department …, the county welfare department … has a duty to inquire whether [the] child is an Indian child.  Inquiry includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled."  (§ 224.2, subd. (b).)  Extended family members include adult grandparents, siblings, brothers- or sisters-in-law, aunts, uncles, nieces, nephews, and first or second cousins.  (25 U.S.C. § 1903(2); § 224.1, subd. (c).)

"If the court[ or the department] has reason to believe that an Indian child is involved in a proceeding, but does not have sufficient information to determine that there is reason to know that the child is an Indian child, the court[ or the department] shall make further inquiry regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable."  (§ 224.2, subd. (e).)  "There is reason to believe a child involved in a proceeding is an Indian child whenever the court, social worker, or probation officer has information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe."  (*Id*., subd. (e)(1).)

Thereafter, "[i]f there is reason to know … that the child is an Indian child, the party seeking foster care placement shall provide notice in accordance with [section 224.3, subdivision (a)(5)]."  (§ 224.2, subd. (f).)  "If there is reason to know the child is

an Indian child, but the court does not have sufficient evidence to determine that the child is or is not an Indian child, the court shall confirm, by way of a report, declaration, or testimony included in the record that the [department] or other party used due diligence to identify and work with all of the tribes of which there is reason to know the child may be a member, or eligible for membership, to verify whether the child is in fact a member or whether a biological parent is a member and the child is eligible for membership." (§ 224.2, subd. (g).)  "Notices must include the identifying information for the child's biological parents, grandparents, and great-grandparents, to the extent known.  (§ 224.3, subd. (a)(5)(C).)  As a best practice, they should also contain 'all available information about the child's ancestors, especially the ones with the alleged Indian heritage.' " (*In re K.T.* (2022) 76 Cal.App.5th 732, 742.)

County welfare departments "must on an ongoing basis include in its filings a detailed description of all inquiries, and further inquiries it has undertaken, and all information received pertaining to the child's Indian status, as well as evidence of how and when this information was provided to the relevant tribes.  Whenever new information is received, that information must be expeditiously provided to the tribes." (Cal. Rules of Court, rule 5.481(a)(5).)[4]

### 2. Juvenile Court's Finding Unsupported by Substantial Evidence

Here, the department failed to inquire of extended family members and failed to include certain familial information in its notice to the tribe and the Bureau of Indian Affairs.  As noted, "[n]otices must include the identifying information for the child's biological parents, grandparents, and great-grandparents, to the extent known.  (§ 224.3, subd. (a)(5)(C).)  As a best practice, they should also contain 'all available information about the child's ancestors, especially the ones with the alleged Indian heritage.' " (*In re K.T.*, *supra*, 76 Cal.App.5th 732, 742.)

---

[4]   All further references to rules are to the California Rules of Court.

Accordingly, under these circumstances, the department did not fulfill its statutory duty of inquiry. (§ 224.2, subds. (b), (e), and (f).) As a result, the juvenile court's finding that ICWA did not apply was not supported by substantial evidence, and its contrary conclusion was an abuse of discretion. (§ 224.2, subd. (i)(2).)

## D. Prejudice

"Where, as here, the deficiency lies with the [department's] duty of […] inquiry and a juvenile court's related finding of 'proper and adequate further inquiry and due diligence' (§ 224.2, subd. (i)(2)), the error is one of state law ([*In re*] *Benjamin M.*, *supra*, 70 Cal.App.5th at p. 742). Under the California Constitution, '[n]o judgment shall be set aside, or new trial granted, in any cause, on the ground of misdirection of the jury, or of the improper admission or rejection of evidence, or for any error as to any matter of pleading, or for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice.' (Cal. Const., art. VI, § 13.)" (*K.H.*, *supra*, 84 Cal.App.5th at p. 606; accord, *E.C.*, *supra*, 85 Cal.App.5th at p. 151.)

" '[T]o be entitled to relief on appeal from an alleged abuse of discretion, it must clearly appear the resulting injury is sufficiently grave to manifest a miscarriage of justice' [citations], and California law generally interprets its constitutional miscarriage of justice requirement 'as permitting reversal only if the reviewing court finds it reasonably probable the result would have been more favorable to the appealing party but for the error.' " (*K.H.*, *supra*, 84 Cal.App.5th at pp. 606–607; accord, *E.C.*, *supra*, 85 Cal.App.5th at pp. 151–152.)

However, in *A.R.*, the Supreme Court "recognized that while we generally apply a *Watson*[5] likelihood-of-success test to assess prejudice, a merits-based outcome-focused test is not always appropriate because it cannot always adequately measure the relevant

---

5       *People v. Watson* (1956) 46 Cal.2d 818, 836.

harm.  [Citation.]  In other words, where the injury caused by the error is unrelated to an outcome on the merits, tethering the showing of prejudice to such an outcome misplaces the measure, at the expense of the rights the law in question was designed to protect." (*K.H.*, *supra*, 84 Cal.App.5th at p. 609, italics omitted.)

As we explained in *K.H.*, " 'ICWA compliance presents a unique situation ….' " (*K.H.*, *supra*, 84 Cal.App.5th at p. 608.)  "ICWA is not directed at reaching, or protecting, a specific outcome on the merits."  (*Id*. at p. 609; accord, *E.C.*, *supra*, 85 Cal.App.5th at p. 154.)  Rather, " '[t]he purpose of ICWA and related California statutes is to provide notice to the tribe sufficient to allow it to determine whether the child is an Indian child, and whether the tribe wishes to intervene in the proceedings' [citation], and an adequate initial inquiry facilitates the information gathering upon which the court's ICWA determination will rest."  (*K.H.*, at p. 608; accord, *E.C.*, at pp. 152–153.)  Yet, "while the appealing party is usually a parent, parents do not bear the burden of gathering information in compliance with ICWA [citations], and parents may raise the claim of error for the first time on appeal."  (*K.H.*, at p. 608; accord, *E.C.*, at p. 153.)  Further, the ultimate determination whether a child is an Indian child rests with the tribe, not with a parent, the department, or the juvenile court.  (*K.H.*, at p. 590; accord, *E.C.*, at pp. 139–140.)  "[W]here the opportunity to gather the relevant information critical to determining whether the child is or may be an Indian child is lost because there has not been adequate inquiry and due diligence, reversal for correction is generally the only effective safeguard."  (*K.H.*, *supra*, 84 Cal.App.5th at p. 610, citing *A.R.*, *supra*, 11 Cal.5th at pp. 252–254; accord, *E.C.*, *supra*, 85 Cal.App.5th at p. 155.)  Here, it is undisputed the department's inquiry and notice were deficient.  Therefore, the error is prejudicial, and reversal is required.

Accordingly, the juvenile court's finding that ICWA does not apply is conditionally reversed and the matter is remanded.  The juvenile court is instructed to ensure the department conducts " 'a proper, adequate, and duly diligent inquiry under

section 224.2, subdivision[s] (b)[, (e), and (f)], and document its inquiry in the record in compliance with rule 5.481(a)(5).' " (*E.C.*, *supra*, 85 Cal.App.5th at p. 157, quoting *K.H.*, *supra*, 84 Cal.App.5th at p. 621.)

## DISPOSITION

The juvenile court's finding that ICWA does not apply is conditionally reversed, and the matter is remanded to the juvenile court with directions to order the department to comply with the inquiry and documentation provisions set forth in section 224.2, subdivisions (b), (e), and (f), and rule 5.481(a)(5). If, after determining that an adequate inquiry was made consistent with the reasoning in this opinion, the court finds that ICWA applies, the court shall vacate its existing order and proceed in compliance with ICWA and related California law. If the court instead finds that ICWA does not apply, its ICWA finding shall be reinstated. In all other respects, the juvenile court's order terminating parental rights is affirmed.